## Bellefonte Area Board of Education v.
## Bellefonte Area Education Association

*John R. Miller,* of *Miller, Kistler & Campbell,* for plaintiff.

*Thomas A. Walrath,* for defendants.

### ADJUDICATION

#### I. *Issue*

CAMPBELL, P. J., November 16, 1972.—The issue involved herein is whether or not the temporary injunction granted by this court on September 26, 1972, should be made permanent.

#### II. *Facts*

Defendant association is the duly certified bargaining unit for teachers in the Bellefonte Area Schools. In January of 1972, defendant association entered into bargaining negotiations with plaintiff board for a new agreement to begin July 1, 1972. After considerable negotiations, the parties called in the service of the Pennsylvania Bureau of Mediation. Although the assigned mediator certified to the Pennsylvania Labor Relations Board that an impasse existed on February

24, 1972, he continued to sit with the parties as a mediator as late as October 2, 1972. On September 8th, the association gave public notice of its intention and promptly went out on strike on September 11, 1972. Fifteen days later, to wit, September 26, 1972, the board asked this court for a preliminary injunction. Extensive testimony was taken on October 3rd, briefs were filed on November 13th and the matter is now awaiting decision.

The Pennsylvania Labor Relations Board appointed no fact-finding panel nor was one requested or demanded by defendant association as provided in section 802 of the Public Employe Relations Act of July 23, 1970, P. L. 563, 43 PS § 1101.802.

A resume of the testimony discloses that the school district is required to have 180 instructional days prior to June 30, 1973. The present school calendar calls for the last instructional day to fall on June 8, 1973. From June 8, 1973, to June 30, 1973, only 15 school days are available to make up lost time. The present strike had already consumed 13 days of school, leaving a cushion of only two days before financial reimbursement loss of $16,307 per day would occur. Secondly, the district was involved in a quality assessment program conducted by the Pennsylvania Department of Education which would be lost if the strike were not promptly terminated. Finally, the testimony is replete with the usual and customary inconveniences, students' disadvantages and community unrest. From a careful examination of all of the testimony, the court makes two specific findings of fact:

1. Defendant association has not exhausted all of the procedures outlined in Act 195, more particularly the fact-finding process outlined in section 802 which is a prerequisite to a strike.

2. Secondly, that the strike creates a clear and present danger or threat to the health, safety and welfare of the public.

## III. DISCUSSION

Section 1002 of the Public Employe Relations Act reads as follows:

"Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited. In the event of a strike during this period the public employer shall forthwith initiate an action for the same relief and utilizing the same procedures required for prohibited strikes under section 1001."

We firmly believe that section 802 of the act was inserted and designed for a particular purpose and is a prerequisite to a strike by public employes. Fact-finding is important and essential. The findings of fact and recommendations are to be sent to both parties. It requests each of the parties to accept or reject the specific facts or recommendations, which serves the purpose of pinpointing the issues. The act then provides for publicizing the facts and recommendations so that public pressure may be brought to bear, which may influence a proper settlement. Since section 802 has not been utilized in this case, we hold that plaintiff is entitled to a continuation of the injunction.

In our examination of the testimony, we have disregarded disruption of routine school administrative procedures, cancellation of extracurricular activities, inconveniences likely to accompany any strike, student disadvantages and community unrest. On the other hand, we specifically find two matters which constitute *clear* and *present* danger to the welfare of the public, to wit, loss of State subsidies and loss

of a quality assessment program sponsored by the Department of Education which started the previous school year and was to continue for several successive school years.

"The danger that the District will lose state subsidies because of a strike would be proper grounds for enjoining the strike if such danger were 'clear and present'": Armstrong School District v. Armstrong Education Association, et al., 5 Comm. Ct. 378 (1972).

It is true that vacation schedules were not taken into consideration in the court's calculation of available make-up days nor do we think that it should when we consider the threatened student strike in a Pennsylvania city protesting reduced vacation periods. It can readily be seen that chaos will result if we do so. If we allow the immediate strike to continue, it will create a tragic economic result to the school district.

Proponents of the right to strike should recognize that the bargaining parties should stand on relatively equal footing. It is the court's observation that collective bargaining in our education system is grossly unfair. It is weighted in favor of the educational association for the following reasons:

First, teachers are protected by the powerful and valuable tool of tenure.

Secondly, teachers are protected by a mandated increase in salary, regardless of whether the general economy of the country is increasing or decreasing, and they have a mandated raise on the table at the beginning of any collective bargaining.

Third, they are bargaining with volunteer school boards, busy with their own economic survival, serving as public servants. They are not professional career employers making a living from their office. It would be fair to state that their economic motive is unequal to that of the teachers

Finally, the State of Pennsylvania holds a hammer over the head of the school district: "If you don't keep the schools open for 180 days, you lose State subsidy not only in the year the schools are closed, but in the year following." To ignore this mandate spells economic bankruptcy. Until some of these things are adjusted by the legislature, the only remedy that the public has is for courts to balance the equities and control the strike weapon provided for in the Public Employe Relations Act. We, therefore, enter the following

## ORDER

And now, November 16, 1972, the preliminary injunction granted by this court on September 26, 1972, is continued and made permanent for the duration of the school year 1972-73.